IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

CLARA ARREBATO PEDROSO, and )
KATHERINE HERNANDEZ ARREBATO,
Individually, and as Class Representatives, et al.    ) Case No. 3:21-CV-00540-CHB

PLAINTIFFS,    )

v.    )

STATE FARM MUTUAL AUTOMOBILE    )
INSURANCE COMPANY
    )
DEFENDANT
_____)

**PLAINTIFFS' FIRST AMENDED COMPLAINT**
**FOR DAMAGES WITH JURY DEMAND**
*ELECTRONICALLY FILED*

Come the Plaintiffs, Clara Arrebato Pedroso and Katherine Hernandez Arrebato, by and

through counsel, individually and on behalf of all others similarly situated, upon personal

knowledge and belief, as well as from the preliminary investigation performed by their attorneys

as to the matters stated herein, and allege as follows:

**I.    PREAMBLE**

1.    This is a class action brought pursuant to Rule 23 of the Federal Rules of Civil

Procedure to recover damages suffered by the named Plaintiffs and other class members as a result

of being STATE FARM Mutual Automobile Insurance Company insureds from August 31, 2004

to present who were unilaterally denied no-fault benefits based solely upon a "paper review"

generated by a medical provider hired by Defendant STATE FARM.

2.      As a result of the wrongful denial of payment of no-fault benefits by Defendant STATE FARM based upon a "paper review," Plaintiffs sustained damages because their no-fault benefits were unilaterally terminated resulting in unusable benefits.

3.      Plaintiffs bring this action on behalf of themselves and all other individuals similarly situated in the state of Kentucky who are members of a class of STATE FARM insureds that from August 31, 2004 to present were unilaterally denied no-fault benefits based solely upon the use of a "paper review" generated by a medical provider hired by Defendant STATE FARM and had no-fault benefits rendered unusable as a result of the unlawful termination of benefits.

## II.      PARTIES

### PLAINTIFFS

4.      At all times pertinent hereto, Plaintiff and Class Representative Clara Arrebato Pedroso was a citizen and resident of Jefferson County, Kentucky residing at 1720 Colony Court, Louisville, Kentucky 40216.

5.      At all times pertinent hereto, Plaintiff and Class Representative Katherine Hernandez Arrebato was a citizen and resident of Jefferson County, Kentucky residing at 1720 Colony Court, Louisville, Kentucky 40216.

### DEFENDANT

6.      At all times incident hereto, Defendant STATE FARM Mutual Automobile Insurance Company (hereinafter referred to as "STATE FARM") was a corporation incorporated under the laws of Illinois and doing business in the Commonwealth of Kentucky.

## III.      JURISDICTION AND VENUE

7.      All allegations complained of herein arise from conduct and actions or omissions committed by Defendant STATE FARM in the state of Kentucky.

8.      The common law of the state of Kentucky and the Kentucky Revised Statutes are applicable to Defendant STATE FARM's activities while engaged in this conduct.

9.      Kentucky law should be applied to the claims asserted in this action.

## IV.      FACTUAL BACKGROUND OF CLAIMS

### A.      CLARA ARREBATO PEDROSO

10.      Defendant STATE FARM issued policies of insurance to Plaintiff Clara Arrebato Pedroso that were in full force and effect as of September 11, 2010 when she was injured in a car crash.

11.      On March 28, 2011, Melissa Ross, Claims Adjuster for Defendant State Farm sent a letter requesting copies of the medical bills from Kurt M. Freilinger, D.C. and stated that once received and reviewed, State Farm would "determine if they are billable."

12.      On April 19, 2011, Todd Libman, Claims Adjuster for Defendant State Farm sent a letter stating that it was having a utilization or "paper review" generated and that once the results were completed, a copy would be forwarded to Plaintiff's counsel.

13.      On September 10, 2011, Todd Libman, Claims Adjuster for Defendant State Farm sent a letter indicating that based on the utilization or "paper review" completed by Michael Hillyer, D.C, State Farm was denying payment of Plaintiff's incurred medical bills and treatment due to the chiropractor's conclusions that, "he did not believe Ms. Pedroso's medical treatment was reasonable and necessary in light of her injury," and it is undisputed that Dr. Hillyer who was hired by Defendant STATE FARM never saw or examined Plaintiff Clara Arrebato Pedroso.

14.      Pursuant to a Medical Payment Details chart provided by Defendant STATE FARM, State Farm paid $1,905.00 of the $4,450.00 in medical charges incurred by Plaintiff Clara

Arrebato Pedroso before denying payment of the outstanding bills and terminating all of her remaining no-fault benefits.

15.     As a result of the unilateral denial of payment of no-fault benefits based upon a "paper review," Plaintiff Clara Arrebato Pedroso had $5,545.00 in no-fault benefits that were rendered unusable.

16.     A "paper review" of a claimant's no-fault file is an impermissible and unlawful procedure for terminating, denying or reducing payment of no-fault benefits pursuant to the Kentucky Motor Vehicle Reparations Act.

17.     Defendant STATE FARM's unilateral termination, denial or reduction of Plaintiff's no-fault benefits caused Plaintiff to suffer monetary damages including loss of use of purchased no-fault benefits, and she is entitled to statutory interest of 18%, attorney fees, and the balance of her unusable benefits in the amount of $5,545.00.

18.     As of September 10, 2011, Defendant STATE FARM paid $1,905.00 in no-fault benefits on Plaintiff Clara Arrebato Pedroso's behalf, she has approximately $2,550.00 in unpaid medical charges that remain outstanding that should have been paid by Defendant STATE FARM, and she has unusable benefits in the amount of $5,545.00.

19.     As of September 10, 2011, Plaintiff Clara Arrebato Pedroso had approximately $5,545.00 remaining in unused no-fault benefits that were rendered unusable as a result of the unlawful termination of benefits.

B.     KATHERINE HERNANDEZ ARREBATO

20.     Defendant STATE FARM issued policies of insurance to Plaintiff Katherine Hernandez Arrebato that were in full force and effect as of September 11, 2010 when she was injured in a car crash.

4

21.      On March 28, 2011, Melissa Ross, Claims Adjuster for Defendant State Farm sent a letter requesting copies of the medical bills from Kurt M. Freilinger, D.C. and stated that once received and reviewed that State Farm would "determine if they are billable."

22.      On April 19, 2011, Todd Libman, Claims Adjuster for Defendant State Farm sent a letter stating that it was having a utilization or "paper review" completed and that once the results were completed, a copy would be forwarded to Plaintiff's counsel.

23.      On September 10, 2011, Todd Libman, Claims Adjuster for Defendant State Farm sent a letter indicating that based on the utilization or "paper review" completed by Michael Hillyer, D.C, State Farm was denying payment of Plaintiff's outstanding medical bills and treatment due to the chiropractor's conclusions, who was hired by Defendant STATE FARM, and it is undisputed he never saw or examined Plaintiff Katherine Hernandez Arrebato.

24.      Pursuant to a Medical Payment Details chart provided by Defendant STATE FARM, State Farm paid $2,380.00 of the $2,440.00 in medical charges incurred by Plaintiff Katherine Hernandez Arrebato.

25.      As a result of the unilateral denial of payment of no-fault benefits based upon a "paper review," Plaintiff Katherine Hernandez Arrebato had $7,560.00 in no-fault benefits that were rendered unusable.

26.      A "paper review" of a claimant's no-fault file is an impermissible and unlawful procedure for terminating, denying or reducing payment of no-fault benefits pursuant to the Kentucky Motor Vehicle Reparations Act.

27.      Defendant STATE FARM's unilateral termination, denial or reduction of Plaintiff's no-fault benefits caused Plaintiff to suffer monetary damages including loss of use of purchased

no-fault benefits, and she is entitled to statutory interest of 18%, attorney fees, and the balance of her unusable no-fault benefits in the amount of $7,560.00.

28.    As of September 10, 2011, Defendant STATE FARM paid $2,380.00 in no-fault benefits on Plaintiff Katherine Hernandez Arrebato's behalf, and she has approximately $60.00 in unpaid medical charges that remain outstanding that should have been paid by Defendant STATE FARM, and she has unusable benefits in the amount of $7,560.00.

29.    As of September 10, 2011, Plaintiff Katherine Hernandez Arrebato has approximately $7,560.00 remaining in unused no-fault benefits that were rendered unusable as a result of the unlawful termination of her no-fault benefits.

## V.    BACKGROUND OF THE KENTUCKY MOTOR VEHICLE REPARATIONS ACT

30.    The Kentucky Motor Vehicle Reparations Act is codified in KRS §304.39.

31.    The public policy and purpose are set forth in KRS §304.39-010 where the statute reads in pertinent part:

> "The toll of about 20 million motor vehicle accidents nationally and comparable experience in Kentucky upon the interests of victims, the public, policy holders and others require that improvements in the reparations provided for herein be adopted to affect the following purposes:
>
> (1)    to require owners, registrants, and operators of motor vehicles in the Commonwealth to procure insurance covering Basic Reparation Benefits and legal liability arising out of ownership, operation or use of such motor vehicles;
>
> (2)    to provide prompt payment to victims of motor vehicle accidents without regard to whose negligence caused the accident in order to limit the inequities which fault - determination has created;
>
> (3)    to encourage prompt medical treatment and rehabilitation of the motor vehicle accident victim by providing for prompt payment of needed medical care and rehabilitation;
>
> (4)    to permit more liberal wage loss and medical benefits by allowing claims for intangible loss only when the determination is reasonable and appropriate;

6

(5)     to reduce the need to resort to bargaining and litigation through a system which can pay victims of motor vehicle accidents without the delay, expense, aggravation, inconvenience, inequities and uncertainties of the liability system; …"

KRS §304.39-030 addresses the right to Basic Reparation Benefits:

"(1)     If the accident causing injury occurs in this Commonwealth every person suffering loss from injury arising out of the maintenance or use of a motor vehicle has a right to Basic Reparation Benefits, unless he has rejected the limitation upon his tort rights as provided in KRS §304.39-060(4)."

32.     The Motor Vehicle Reparations Act ("MVRA") was intended to provide persons involved in automobile accidents an indemnity that could not be infringed upon by any means in exchange for the parties' right to pursue traditional tort remedies.

33.     As set forth in *Blue Cross and Blue Shield of Ky., Inc. v. Baxter*, 713 S.W.2d 478 (Ky. App. 1986), the intent of enacting no-fault legislation was to provide a remedy to automobile accident victims that could not be impinged upon by any means whatsoever.

34.     KRS §304.39-040 addresses, "Obligation to pay Basic Reparation Benefits" and reads: "(1) Basic Reparation Benefits shall be paid without regard to fault."

35.     As a result of KRS §304.39, all individuals that operate a motor vehicle in Kentucky are deemed to have accepted the limitations on their right to sue and be sued.

36.     Basic no-fault coverage in the amount of $10,000.00 is mandatorily to be paid by the insurer of the vehicle in which an injured person is traveling at the time of the accident regardless of who was at fault in the accident unless the individual is deemed to be ineligible or has rejected basic reparation benefits.

37.     The MVRA is devoid of any language that allows an insurance company to avoid the mandatory dictates of the MVRA by reaching the conclusion through a record review, a peer review or a medical review, that no-fault benefits should be terminated or denied.

7

38.     Kentucky law does not permit insurance carriers to impose any additional pre-conditions to payment of no-fault benefits other than those set forth in the MVRA.

39.     There is an absolute duty to pay a no-fault claim once reasonable proof has been provided unless the individual is ineligible or the insurance company has strictly complied with the requirements of KRS §304.39-270.

40.     No-fault payments become overdue thirty days after receipt of reasonable proof the loss was incurred pursuant to KRS §304.39-210(1).

41.     Pursuant to KRS § 304.39-210(2), unreasonable denials of no-fault benefits bear interest at the rate of eighteen percent.

42.     When a medical bill is presented by a no-fault claimant to an insurer for payment, there is no reasonable foundation for failure to timely pay the bill within 30 days even if the insurer acts misguidedly in good faith, and the insurer is liable for 18% interest.

43.     KRS § 304.39-220(1) provides that a party is entitled to reasonable attorney's fees incurred in enforcing the payment of a no-fault claim.

44.     The MVRA is devoid of any provision supporting the proposition that a "paper review" generated by a doctor hired by the insurance company can be used as a basis to deny no-fault benefits.

45.     The words "peer review," "medical review," and "record review" are entirely absent from the Act.

46.     KRS 304.39-270 entitled "Mental or Physical Examinations" provides:

(1)  If the mental or physical condition of a person is material to a claim for past or future basic or added reparation benefits, the reparation obligor may petition the Circuit Court for an order directing the person to submit to a mental or physical examination by a physician.  Upon notice that the person to be examined and all persons having an interest, the Court may make the order for good cause shown.

The order shall specify the time, place, manor, conditions, scope of the examination, and the physician by whom it is to be made.

47.    KRS 304.39-270 stands for the proposition that if the reparations obligor does not demonstrate to the Court "good cause" and then move the Court for an Order for a mental or physical examination to occur, the only other option allowed under the Kentucky Motor Vehicle Reparations Act is for the insurer to pay the no-fault claim.

48.    The obligor may move the Court for an Order for an examination, or the obligor may pay the claim, and there are no alternatives as set forth in the Act.

49.    There is no provision in the KMVRA that permits an insurance company to unilaterally terminate no-fault benefits.

50.    In *Miller v. United States Fidelity and Guaranty Company,* 909 S.W.2d 339 (Ky. App.2005) the Kentucky Court of Appeals approved Allstate Insurance Company's submission of a report from a physician in support of its request that the Court order an independent medical examination of the insured, however, the report was not used as a basis for denying no-fault benefits, but rather simply in support of a motion for an independent medical examination.

51.    Also, in *Miller v. United States Fidelity and Guaranty Company,* 909 S.W.2d 339 (Ky. App. 2005), the Kentucky Court of Appeals noted that the public policy underlying the Kentucky Motor Vehicle Reparations Act dictates that an insurer may not enforce an overreaching policy provision requiring an independent medical examination when and as often as the company may reasonably require in clear derogation of the statutory language, which clearly sets forth the standard by which an insured can be forced to undergo independent medical examination and creates a statutory presumption of reasonableness of medical bills as submitted.

52.    In *White v. Allstate Ins. Co.*, 265 S.W.3d 254 (Ky. App. 2007), the insured refused to voluntarily submit to an independent medical examination, and the insurer sought a court order,

and in support of the court order, submitted an affidavit by a reviewing physician, but the sworn affidavit was not utilized as the basis for denying no-fault benefits to an insured, but rather was used as a basis for requesting that the court order an independent medical examination.

53.    To permit an insurance company to avoid the requirements of the Kentucky Motor Vehicle Reparations Act by producing a "paper review" authored by a hired medical provider as justification for terminating or denying no-fault benefits circumvents the spirit and the letter of the law as set forth in the Kentucky Motor Vehicles Reparations Act.

54.    In *Houchens v. Government Employees Insurance Company*, Case No. 2014-CA-002017-MR (2016), the Kentucky Court of Appeals in addressing the use of "paper reviews" unanimously ruled as follows:

> "We discern a distinct difference between the use of a medical records review by a reparations obligor for the purpose of establishing good cause for a court-ordered IME and the use of a medical records review by that obligor for the purpose of unilaterally denying or terminating an insured's benefits.  Clearly, as is evidenced by the case law discussed herein, our legislature enacted KRS 304.29-270(1) as a safeguard against the misuse of IMEs.  Not only must the obligor demonstrate good cause for the IME, but the court is then required to set the time, place, manner, conditions, scope of the examination, and the physician by whom it is to be made. **It is beyond reason that the legislature would require court oversight of an IME of an insured yet would condone that insured's benefits being terminated or denied solely based upon a unilateral paper review of his or her records. We must agree with Appellants that the position asserted by GEICO would essentially make it the judge, jury and executioner.  We are of the opinion that such violates the intent and purpose of Kentucky's MVRA.**" (Emphasis added.)

55.    In November 2018, the Kentucky Supreme Court in the case of *Government Employees Ins. Co. v. Sanders*, 569 S.W.3d 923 (Ky. 2018), confirmed that "paper reviews" cannot be used to deny no-fault benefits.

56.    In November 2018, the Kentucky Supreme Court unanimously ruled in *Government Employees Ins. Co. v. Sanders*, 569 S.W.3d 923 (Ky. 2018):

"If the medical bills submitted is presumed to be reasonable, what is required for GEICO to be able to overcome the presumption? The presumption is enough to establish a starting point that the medical treatment is reasonably needed and the bill is reasonable for what has been provided, as 'a presumption imposes on the party against who it is directed the burden or going forward with evidence to rebut or meet the presumption…' KRE 301. Since a legal presumption must be overcome in order to deny a medical bill or expense, an action would have to be filed with the courts – and GEICO would be required to present evidence to rebut said presumption. **Because the bills are presumed reasonable, this would prevent GEICO from unilaterally denying medical treatment or bills based upon a paper review of the medical record, or a mental or physical examination. To hold otherwise and to yield to GEICO's position would, as the Court of Appeals opined, 'essentially make GEICO the judge, jury and executioner.' As that Court stated, 'We are of the opinion that such violates the intent and purpose of Kentucky's MVRA.'**" At p. 928. (emphasis added).

57.     Neither the Kentucky Court of Appeals nor the Kentucky Supreme Court has addressed what happens to the remainder of no-fault benefits that are rendered unusable by an unlawful termination of benefits by a "paper review," and the KMVRA does not delineate a remedy as such conduct is not condoned or anticipated.

58.     It is undisputed that Defendant STATE FARM unlawfully denied no-fault benefits totaling $6,300,000.00 for 1,600 no-fault claimants during the class period that were **not** remediated as part of STATE FARM's "voluntary remediation" program.

59.     It is unknown what the total amount of no-fault benefits rendered unusable is for the State Farm insureds that had their no-fault benefits unlawfully terminated but using an average of the benefits rendered unusable for the two class representatives, approximately $6,552.50 would result in a total of almost $10,500,000, not including 12% or 18% interest, in purchased no-fault benefits being rendered unusable.

60.     Defendant STATE FARM unlawfully and unilaterally terminated all remaining no-fault benefits by using "paper reviews" for each insured depriving its insureds of the use and benefit of all remaining no-fault benefits.

61.    For illustrative purposes, Defendant STATE FARM sent a letter to Plaintiff Clara Arrebato Pedroso stating: "…Based on the results, we are denying all current **and future medical bills and treatment**." (emphasis added).

62.    The sooner Defendant STATE FARM preemptively terminated no-fault benefits, the more profitable the unlawful scheme was for State Farm.

63.    As a result of preemptively terminating no-fault benefits, the remedy is to apply the KMVRA by ordering Defendant STATE FARM to pay the remaining unusable benefits to class members plus 18% interest and attorney's fees, or alternatively, finding that the denial falls outside the boundaries of the KMVRA and is subject to common law remedies such as bad faith.

64.    To allow Defendant STATE FARM to retain preemptively denied no-fault benefits denies no-fault claimants the use of their purchased no-fault benefits and allows State Farm a sizeable windfall as a result of its own wrongful conduct.

## VI.    A CLASS OF PLAINTIFFS CERTIFIED PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE IS APPROPRIATE

65.    Plaintiffs bring the instant litigation as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure with the named plaintiffs acting as representative parties on behalf of all other similarly situated unnamed or yet unknown Plaintiffs for the reasons elaborated upon below.

### NUMEROSITY

66.    Membership in the Class is believed to exceed one hundred making it so numerous that it is impracticable to bring all class members before the Court individually.

67.    Defendant State Farm concedes that its own records show that just for the period from 2009 to 2014 (roughly one-third of the asserted fifteen-year class period) there were more than 1,000 individuals who submitted medical charges under PIP coverage provided by Kentucky

12

polices that State Farm denied a result of an unlawful "paper review." (See Defendant's Notice of Removal, p. 8, filed August 23, 2021).

68.     The exact number of Class members that had no-fault benefits rendered unusable is unknown, but it is believed that the number of individuals affected by the conduct of Defendant STATE FARM exceeds one hundred due to Defendant's practice of using a "paper review," "peer review," or "medical report" of a  no-fault claimant's file to justify termination or denial of the insured's no-fault benefits.

69.     Although the representative plaintiffs do not presently know the names or identities of all potential members of the Class, their identities and addresses can be readily ascertained from documentation maintained by Defendant STATE FARM.

## COMMONALITY

70.     There are numerous and substantial questions of law and fact common to all of the representative Plaintiffs and the other members of the Class that control this litigation and predominate over any individual issues.

71.     The conduct of Defendant STATE FARM and subsequent injuries arise from the exact same group of facts, namely, the unlawful practice and policy of using a "paper review," "peer review," or "medical report" of a no-fault claimant's file to justify termination or denial of the insured's no-fault benefits.

72.     If Defendant STATE FARM is liable to any one representative Plaintiff for damages caused by Defendant STATE FARM's unlawful "paper review" practice, Defendant STATE FARM would be liable to each member of the class.

73.     The common questions raised by Plaintiff representatives and the Class members ' claims include:

a. Whether Defendant STATE FARM has unilaterally engaged in a practice and policy of terminating and/or denying no-fault benefits in a manner not condoned by the KMVRA;

b. Whether the representative Plaintiffs and class members suffered damages, including the loss of the use of purchased insurance benefits, 18% interest and attorney fees due to the conduct of Defendant STATE FARM;

c. Whether the Plaintiff representatives and Class members are entitled to damages including payment of the balance of unusable no-fault benefits, 18% interest and attorney fees for the aforementioned conduct of Defendant STATE FARM;

## TYPICALITY

74. The Plaintiff representatives and Class members maintain typical claims.

75. Plaintiff representatives Clara Arrebato Pedroso, and Katherine Hernandez Arrebato are citizens and residents of Kentucky insured by Defendant STATE FARM.

76. The Plaintiff representatives have experienced termination or denial of their no-fault benefits by Defendant STATE FARM as have other members of the Class they seek to represent on the same grounds – the practice of using a "medical report," "peer review" or "record review."

77. None of the Plaintiff representatives have been compensated for their damages.

78. The Plaintiff representatives 'claims are typical of those of the members of the class, having suffered damage that is the same as other members of the Class, caused by the same conduct alleged to have occurred by Defendant STATE FARM.

79. The Plaintiff representatives do not have any interest adverse to those of the other members of the Class.

## REPRESENTATIVES

80. The Plaintiff representatives will fairly and adequately protect the interest of the Class members.

14

81.     The Plaintiff representatives have retained counsel experienced and competent in

the prosecution of class actions and complex litigation.

## CERTIFICATION PURSUANT TO RULE 23 OF THE FEDERAL RULES OF CIVIL PROCEDURE

82.     A class action is superior to other available methods for the fair and efficient

adjudication of this controversy for the following reasons:

    a.      The prosecution of separate actions by individual members of the Class
    creates a risk of inconsistent adjudications and substantially impairs and impedes the
    ability of other members of the Class to protect their interests;

    b.      Defendant STATE FARM has acted in the same way to all members of the
    Class;

    c.      Common questions of law and fact as set forth above predominate over
    individual issues for members of the Class and make the class action superior to other
    available methods to resolve this controversy;

    d.      Given the complexity of the litigation, combined with the anticipated size
    of the individual Class members 'claims and the limited resources of the Class
    members, a class action would assist with an orderly and expeditious administration of
    the Class claims, and foster economies including effort and expense along with judicial
    economy and uniformity of decisions;

    e.      Most individual members of the Class do not have the ability to pursue these
    claims on an individual basis;

    f.      When the liability of Defendants has been determined, the value of claims
    of all members of the Class can be determined by the Court with the assistance of a
    master commissioner or some other judicial mechanism to fairly, quickly and
    completely resolve the issues;

    g.      This litigation does not present an inherent difficulty that would impede its
    management by the Court as a class action.

83.     There is between the Plaintiff representatives and the Class a community of interest

in the subject matter of the suit and in the appropriate remedy thus satisfying the basic criteria for

class certification.

## VII.   DECLARATORY JUDGMENT

84.     The plaintiff class representatives Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, along with the other putative members of the Class are entitled to a declaratory judgment determining that Defendant STATE FARM as the reparation's insurer had no reasonable basis to terminate or deny no-fault benefits on the basis of "paper reviews," "peer reviews," or "medical record review."

85.     The plaintiff class representatives Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, along with the other putative members of the Class are entitled to a declaratory judgment determining that the STATE FARM insureds, including the plaintiff class representatives and members of the plaintiff class, are entitled to the balance of their remaining no-fault benefits.

86.     The plaintiff class representatives Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, along with the other putative members of the Class are entitled to a declaratory judgment determining that Defendant STATE FARM is responsible for payment of the balance of the unusable no-fault benefits that were rendered unusable due to unlawful "paper reviews."

## VIII.   INJUNCTIVE RELIEF

87.     The plaintiff class representatives Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, along with the other putative members of the Class are entitled to an injunction preventing Defendant STATE FARM, as the reparations insurer, from the unnecessary, unreasonable and ultimately unlawful practice of terminating or denying no-fault benefits without following the statutory mandates of the Kentucky Motor Vehicle Reparations Act.

88.     The plaintiff class representatives Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, along with the other putative members of the Class are entitled to a declaratory judgment determining that Defendant STATE FARM as the insurer, is not entitled pursuant to Kentucky statutes, public policy or equity to deny or terminate no-fault payments, and for injunctive relief preventing the insurer, Defendant STATE FARM, from attempting to avoid its obligations to pay no-fault benefits without following the statutory requirements for no-fault payments in the future is reasonable and necessary.

## IX.    VIOLATION OF KENTUCKY MOTOR VEHICLE REPARATIONS ACT

89.     A "paper review" of a claimant's no-fault file is an impermissible and inappropriate procedure for terminating or denying payment of no-fault benefits pursuant to the Kentucky Motor Vehicle Reparations Act.

90.     Defendant STATE FARM's unreasonable denial of Plaintiffs 'no-fault benefits caused Plaintiffs Clara Arrebato Pedroso and Katherine Hernandez Arrebato, along with the members of the class, to suffer damages including the loss of use of purchased no-fault benefits, and 18% statutory interest and attorney fees.

## X.    DAMAGES

91.     Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato state the damages complained of herein consist of no-fault benefits that were rendered unusable for each plaintiff, 18% statutory interest on the balance of the unusable benefits, and attorney fees.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs and Class Representatives Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, on behalf of themselves and all others similarly situated, pray for the following:

A.       An order and judgment certifying the class and appointing the above-named

Plaintiffs as class representatives;

B.       That the Plaintiff representatives and Class members be awarded all relief

that they are legally entitled to in an amount to be determined by the Court in the trial of

this matter;

C.       That the Plaintiff representatives and Class members be awarded interest at

the statutory rate of 18% on the balance of all no-fault benefits rendered unusable and

attorney fees in an amount to be determined by the Court;

D.       That the Plaintiff representatives and Class members be granted leave to

file amended pleadings consistent with the proof.

## JURY TRIAL DEMAND

Plaintiffs Clara Arrebato Pedroso, and Katherine Hernandez Arrebato, on behalf of

themselves and all others similarly situated, hereby demand a jury trial on all claims to which they

are entitled to one.

Respectfully submitted,

/s/ *Damon B. Willis*
Damon B. Willis  (KBA #88599)
C. David Ewing (KBA #81580)
Ewing & Willis, PLLC
P.O. Box 991549
Louisville, Kentucky 40269
Telephone:     502/585-5800
Email: damonwillislawyer@yahoo.com
           ewingwillislaw@yahoo.com
*Counsel for Plaintiffs*

## CERTIFICATE OF SERVICE

It is hereby certified that on the 9th day of June 2022 the foregoing document was served via hand-delivery and was electronically filed via the Kentucky Court of Justice eFiling system which will send notice to electronic filing to the following:

David T. Klapheke
BOEHL, STOPHER & GRAVES, LLP
400 West Market Street, Suite 2300
Louisville, Kentucky 40202
*Counsel for Defendant, State Farm Mutual*
*Automobile Insurance Company*


/s/ *Damon B. Willis*
Damon B. Willis
Counsel for Plaintiffs